IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerome W. James, | C/A No. 0:11-1562-DCN-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| A. J. Padula, *Warden*; Nolan, *Associate Warden*; Lt. Commander; Major Dean; Lt. Durant, *Contraband*; Cpt. Cribb; Sgt. Roach; Nurse McDonald; Ms. Cox, *Mental Health*, | |
| Defendants. | |

Plaintiff Jerome W. James ("James"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 66.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), James was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 67.) James filed a response in opposition (ECF No. 71) and the defendants replied (ECF No. 72). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

## BACKGROUND

This case arises from an assault on James by a fellow inmate at Lee Correctional Institution ("LCI") on January 12, 2011. James contends that during "lock down" on this date an inmate entered his cell and assaulted him with a "shank." (Compl., ECF No. 1 at 3.) Liberally construed,

James's Complaint alleges violations of his due process rights and equal protection rights, as well as cruel and unusual punishment. (Compl., ECF No. 1 at 2.) James's principal allegation is that a correctional officer provided the inmate entry into his cell. (Compl., ECF No. 1 at 3.) Because, according to James, during a "lock down" inmates are only allowed to move with the assistance of a prison official, he seemingly reasons that the only way the inmate could have gained access to his cell is with the help of a guard. (Compl., ECF No. 1 at 3.) Further, James alleges that the defendants failed to protect him by declining to place him in protective custody, resulting in the assault that left him with various injuries. (Compl., ECF No. 1 at 3.) James alleges that, following the assault, he received inadequate medical care and was later placed in a cell that contained "human waste, blood, fungus, and dirt on the walls." (Compl., ECF No. 1 at 3-4.) For these alleged violations, James seeks compensatory damages and to be transferred to another facility in which he will be protected. (Compl., ECF No. 1 at 5.)

## DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

PJG

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.  Official Capacity Claims**

To the extent that the defendants are sued in their official capacities for monetary damages, they correctly assert that they are immune from suit in this court. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Sovereign immunity protects

both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, they are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. Will, 491 U.S. at 70-71; see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

**C.    Exhaustion of Administrative Remedies**

The defendants argue that summary judgment should be granted in their favor due to James's failure to exhaust his administrative remedies with regard to his claims. (ECF No. 66-1 at 7.) A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

PJG

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." James includes as attachments to his Complaint three Step 1 grievances regarding his claim that Lee Prison officials failed to protect him from, and facilitated the occurrence of, a January 2011 assault by an inmate that left him with

*PJG*

multiple injuries. (ECF No. 1-3 at 1-3.) His initial Step 1 grievance (LCI 0199-11), filed January 23, 2011, was returned unprocessed on January 25, 2011 because James failed to properly fill out the form by listing multiple issues and on account of "vagueness." On January 26, 2011, James resubmitted a second grievance (LCI 0247-11) that was subsequently returned unprocessed on January 28, 2011 due to an insufficient informal resolution attempt by James and again on account of vagueness. On February 1, 2011, James resubmitted a third grievance (LCI 0294-11) that was returned unprocessed on February 4, 2011 because of James's failure to follow the instructions outlined in the previous returned grievance, LCI 0247-11. James was not allowed further extensions for additional re-submissions. Upon the return of his third grievance, James failed to take the subsequent exhaustive administrative steps necessary to satisfy the procedural requirements.

The defendants argue that because James did not proceed further with the appeal process by filing a Step 2 grievance, he did not exhaust his administrative remedies. James, however, argues that the defendants' "failure to properly process" the Step 1 grievances precluded him from advancing to the Step 2 grievance and thus effectively denied him "any other attempt to address the matter." (Pl.'s Resp. Opp'n Summ. J., ECF No. 71 at 4.) The court finds this argument unavailing. James has failed to support his general assertion that the defendants did not properly process his grievances; in fact, the unrefuted evidence demonstrates that the defendants provided James opportunities and instructions to correct the errors with his grievances and that James failed to comply with these instructions. Cf. Hill v. O'Brien, 387 F. App'x 396 (4th Cir. July 12, 2010); Hill v. Haynes, 380 F. App'x (4th Cir. June 2, 2010). Therefore, even taking the evidence in the light most favorable to James, the record shows that he failed to *properly* exhaust his administrative remedies. See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218. Moreover, even if James's

*PJG*

arguments were sufficient to demonstrate that the defendants prevented him from exhausting his failure to protect claim, it would nonetheless fail for the reasons discussed below.

**D.     Failure to Protect**

James's claims, liberally construed, allege that the defendants failed to protect him from the inmate assault in that they did not place him in protective custody in response to his various complaints regarding his perceived safety. (Compl., ECF No. 1 at 3-4.) Furthermore, he seemingly alleges that not only should the prison officials have had knowledge of the threats against him, but that the correctional officer on duty facilitated the assault by allowing the inmate into James's cell while the unit James was housed in was "on lock down status." (Compl., ECF No. 1 at 3-4.)

To establish a failure to protect claim under the Eighth Amendment to the United States Constitution, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

*PJG*

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. "While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Id. at 843 n.8. However, a showing of mere negligence does not suffice to establish deliberate indifference. See id. at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986). Finally, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted).

The assault upon which James bases his claims is not contested. The parties' accounts of the incident conflict, however. James maintains that an inmate entered his cell without provocation and assaulted him (Compl., ECF No. 1 at 3-4), while the defendants assert that the altercation involved "mutual combat" between James and the other inmate. (Commander Aff. ¶ 8, ECF No. 66-3 at 3.) Even accepting James's account of the incident as true, James admittedly failed to identify or report any threat with any semblance of specificity to the prison officials that would satisfy the second prong. (See Compl., ECF No. 1 at 3.) As evidenced in the affidavit testimony of Captain

*PJG*

Commander, there was neither any indication "of [James] and his mutual combatant's propensity for violence against each other" or that James "was in fear and needed protection from any named inmate." (Commander Aff. ¶ 14, ECF No. 66-3 at 4.) Moreover, Commander testifies to the lack of knowledge of any "specific threat on [James's] safety prior to the altercation," (Commander Aff. ¶ 15, ECF No. 66-3 at 4), and the affidavit testimony of Major Dean parallels this, stating that "[James] could not provide any information . . . to support that his life was in danger." (Dean Aff. ¶ 8, ECF No. 66-4 at 2.)

As to James's allegation that a correctional officer facilitated the assault on James by allowing an inmate into James's cell, there is no evidence in the record to support such a claim. According to Captain Commander's affidavit testimony, the unit in which James was housed "was not on 'lockdown' status" at the time of the incident but rather the incident occurred during the time in which "blocks" of inmates were allowed out of their cells in order to shower and clean their cells. (Commander Aff. ¶ 5, ECF No. 66-3 at 2.) The inmates involved in the altercation were both housed in cells within the same "block" that was allowed out at the same time and, as such, James's cell was among the cells unlocked at the time. (Commander Aff. ¶ 5, ECF No. 66-3 at 3.) James, though acknowledging that it was "shower time," refutes this statement, contending that his cell and that of the other inmate involved in the altercation were not in the same "block."[1] (Pl.'s Resp. Opp'n Summ. J., ECF No. 71 at 5.)

Even accepting James's version of the facts as true, without more, James's mere conjecture that a correctional officer must have facilitated the assault on James by allowing an inmate into his

---

[1] Though James references the "unit log book" as a source capable of substantiating his claims, the court observes that James has had ample opportunity to request such document in the course of discovery in this matter but has failed to properly do so.

PJG

cell is insufficient to refute the defendants' evidence to the contrary. Therefore, the defendants are entitled to summary judgment with regard to this claim.

**E.     Conditions of Confinement**

James also appears to allege that his constitutional rights were denied when, on March 23, 2011, he was placed in a cell that contained human waste, blood, fungus, dirt on the walls and was infested with bugs. (Compl., ECF No. 1 at 3.) Additionally, he alleges that on March 30, 2011 Captain Cribb and "several other officers" took half of his mattress. (Id.) "The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the



challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

According to James, following the above-described assault, James was initially housed with another prisoner. (James Aff. ¶ 6, ECF No. 71-2 at 2.) After James filed several complaints due to "the fear of getting hurt or hurting someone else," James was moved to a "supermax" cell—the cell of which he complains. (Id.) James's Complaint contains absolutely no allegations of any personal participation by any of the named defendants with regard to the condition of his cell. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

With regard to James's allegation that he was deprived of half of his mattress by Defendant Cribb and "several other officers," James has failed to demonstrate, or even allege, that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the loss of half of his mattress. See De'Lonta, 330 F.3d at 634.

Therefore, viewing the facts in the light most favorable to James, the defendants are entitled to summary judgment on these claims.

**F.    Other Claims**

To the extent that James's Complaint may be construed to allege that he was unconstitutionally denied medical care or to allege any other constitutional violations, the court finds

that James has failed to plead sufficient facts to state a plausible claim.  See Iqbal, 556 U.S. 662, 667-68 (2009).  To the extent that James's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims.  See 28 U.S.C. § 1367(c).

### RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 66) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 28, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).